```
              UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW HAMPSHIRE
```

John R. Griffin, Jr.

   v.                                    Case No. 13-cv-539-SM

Hillsborough County Department of
Corrections, Superintendent, et al.

**REPORT AND RECOMMENDATION**

    Before the court are:

- Defendant Matthew Masewic's motion for summary judgment (doc. no. 120); and

- Defendants Hillsborough County, David Dionne, and Denise Ryan's (the "county defendants") motion for summary judgment (doc. no. 133).

    The motions are before the undersigned magistrate judge for a report and recommendation, pursuant to LR 72.1.  For the reasons stated below, this court recommends that the district judge grant the defendants' motions for summary judgment (doc. nos. 120 & 133).

**Background**

    Griffin, who, at the time he filed the instant action, was a pretrial detainee at the Hillsborough County Department of

Corrections ("HCDC"),[1] alleges in his complaint that the defendants denied him constitutionally adequate medical care in violation of the Fourteenth Amendment for persistent swelling in his right knee and for recurrent kidney stone attacks.[2] Griffin also alleges that the defendants are liable for medical negligence under state law, based on the same allegations giving rise to Griffin's Fourteenth Amendment claim. In addition, Griffin alleges that HCDC physician Dr. Matthew Masewic retaliated against him for filing the instant lawsuit by giving him inadequate medical care for his kidney stones in violation of the First Amendment.

A.  <u>Knee injury</u>

Griffin alleges in his complaint that he has a history of right knee swelling, and that the problem recurred and persisted at the HCDC, without adequate treatment, beginning in October of 2013. Griffin asserts that Masewic examined his knee in October of 2013, and ordered that it be treated only by wrapping with a

---

[1] Griffin is currently an inmate housed at the Carroll County Department of Corrections ("CCDC").

[2] Griffin alleges municipal liability as to Hillsborough County and the individual defendants in their official capacities, and supervisory liability as to HCDC Nurse Denise Ryan and Superintendent David Dionne.

2

tight bandage, which Griffin asserts worsened his pain.[3] When Griffin asked Masewic to aspirate excess joint fluid — a procedure that had been performed on Griffin's knee in the past and which he characterizes as standard, effective, and inexpensive — Masewic refused to do so, citing a need for prior approval by the Hillsborough County Board of Commissioners. Griffin claims that HCDC Nurse Denise Ryan delayed his receipt of treatment, and deemed Griffin's decision to loosen the bandage as evidence of noncompliance with prescribed treatment. Although not specifically alleged in the complaint, Griffin asserts in several filings, and the defendants do not contest, that Masewic offered to order an x-ray on Griffin's knee, and Griffin declined. See, e.g., Obj. (doc. no. 137-1) at 4. Griffin alleges that the defendants did not provide any follow-up diagnostic procedures or treatment for his knee after October of 2013, which has caused him to suffer further damage to his knee.

In several filings in this case, Griffin describes the damage to his right knee that was allegedly caused by the

---

[3] Evidence in the record suggests that Griffin was also told to ice his knee four times daily and was placed on activity restriction so he could rest his knee.

defendants' inadequate treatment. For example, Griffin states in one filing that "[s]ubsequent treatment for Rt. Knee effusion proscribed by Carroll County DOC physician Dr. Braga revealed acute knee damage, chondromalacia[4] due to Dr. Masewic's obvious and intentional neglect. An MRI study confirmed this injury and I've recently been prescribed treatment by injection of Synvisc One, Hylan G-F20 for continued pain. Documentation provided by Huggins Hospital Orthopedic Specialist lists swollen knee as a cause of chondromalacia and that aspiration of knee fluid is non-medicinal treatment for osteoarthritis." Doc. no. 103 at 1; see also doc. no. 95 at 2; doc. no. 119 at 2; doc. no. 128-1 at 10; doc no. 137-1 at 1; doc. no. 148-1 at 2-4.

B. Kidney stones

Griffin alleges he suffered three kidney stone attacks after his arrival at the HCDC in September of 2013, with the most recent one occurring on January 16, 2014. That most recent attack, Griffin alleges, caused agonizing, intense pain, and also involved nausea, vomiting, chills, fever, blocked urinary

---

[4] "Chondromalacia is the softening of the cartilage and, when located in the knee, can create a painful condition." Velez v. Colvin, No. 13-cv-30032-MAP, 2014 WL 1247898, at *1 n.2 (D. Mass. Mar. 24, 2014) (citing Stedman's Medical Dictionary 332 & 1311 (26th ed. 1995)).

4

output, and blood in Griffin's urine when he passed the stone eight hours later. Griffin further asserts that the failure to provide him with treatment for the January 16 kidney stone attack, other than a small cup of Advil and Tylenol (which he vomited up), for the eight-hour duration of the attack, caused him to suffer excruciating pain unnecessarily, and put him at a heightened risk of a urinary tract infection.

## Discussion

The defendants move for summary judgment, arguing that Griffin lacks expert testimony, which is required to prove his claims. Griffin objects, arguing that the defendants' medical care was so obviously inadequate that expert testimony is not necessary to show that the defendants' actions violated his state and federal rights.[5]

---

[5] The county defendants offer several other arguments, including that the record evidence fails to support a prima facie case of any of Griffin's claims, that Dionne and Ryan are entitled to defer to Masewic's medical opinions and decisions, and that the county defendants are entitled to qualified immunity. Because, as discussed further below, Griffin's lack of expert testimony is dispositive of the defendants' motions, the court does not address these additional arguments.

A.      State Law Medical Negligence Claim

In a previous motion, Griffin challenged as unconstitutional the requirement in RSA 507-E:2 for an expert to support a state law medical negligence claim.[6]  The court held that Griffin's state constitutional challenge was without merit, and explained that Griffin could not avoid application of RSA 507-E:2 to this case.  See Or. (doc. no. 142) at 4-5.

Griffin subsequently disclosed himself as an expert.  In an order dated May 20, 2015, the court held that Griffin had "not carried his burden to show that he is qualified to offer competent and relevant opinion testimony."  Or. (doc. no. 165) at 7.

Griffin has not offered anyone other than himself as an expert in this case.  Because the court has ruled that Griffin is not qualified to serve as an expert in this case, Griffin lacks expert testimony, which is required to prove a state law medical negligence claim under RSA 507-E:2.  Therefore, the defendants are entitled to judgment on Griffin's state law

---

[6] RSA 507-E:2 provides in pertinent part: "In any action for medical injury, the plaintiff shall have the burden of providing by affirmative evidence which must include expert testimony of a competent witness or witnesses" that a doctor's negligence proximately caused the plaintiff's injury.

claim.

B.  Fourteenth Amendment Claim

Griffin alleges that he received inadequate medical care while he was a pretrial detainee at the HCDC in violation of his Fourteenth Amendment rights. He contends that expert testimony is not necessary to prove this claim because his own statements and evidence in the record concerning the treatment he received at the jail show that the care he received was constitutionally inadequate.

Medical care in jail violates the Fourteenth Amendment if the "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." Ruiz-Rosa v. Rullan, 485 F.3d 150, 156 (1st Cir. 2007) (internal citations and quotation marks omitted). Deliberate indifference means that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A plaintiff may show deliberate indifference to a serious medical need by "the denial of needed care as punishment and by decisions about medical care made recklessly with actual knowledge of impending harm, easily

preventable." Ruiz-Rosa, 485 F.3d at 156 (internal citation quotation marks omitted).

Whether expert testimony is necessary to prove deliberate indifference to a serious medical need depends on the nature of the specific issues in the particular case and what other evidence is available in the record. See, e.g., Meeks v. Allison, 290 F. App'x 4, 5 (9th Cir. 2008) (no need for expert when parties agreed as to proper course of treatment for plaintiff's medical needs); Robinson v. Hager, 292 F.3d 560, 564 (8th Cir. 2002) (expert needed to show defendants' actions caused stroke); Brown v. Englander, No. 10-cv-257-SM, 2012 WL 1986518, at *3 (D.N.H. June 1, 2012) (expert needed to show surgery was medically necessary); Chambers v. Warden, No. Civ. 02-304-JD, 2004 WL 42637, at *4 (D.N.H. Jan. 8, 2004) (expert needed to show need and availability of treatment which was not apparent from the record).

Griffin's deliberate indifference claim is based on the treatment he received for right knee pain and kidney stones. The court addresses separately the necessity of expert testimony to prove Griffin's Fourteenth Amendment claim for each condition.

1. Knee injury

As discussed above, Griffin alleges that the defendants denied him constitutionally adequate treatment on his right knee, and that the denial of treatment caused him further pain and damage, including, as he later asserts in subsequent filings, chondromalacia. Based on the medical care he received at the HCDC and his subsequent development of chondromalacia, Griffin asserts that expert testimony is not necessary to show that Masewic and the other defendants were deliberately indifferent to his serious medical needs. He contends that "Masewic's six month delay to decide to aspirate my knee cost me an opportunity to fully recover from simple knee effusion as in the past. He caused me to suffer chronic pain from resultant chondromalacia which may be permanent. Proximate cause and causal link are obvious." Obj. (doc. no. 137-1) at 13; see also id. at 2 & 4; Obj. (doc. no. 128-1) at 7.

Assuming that Griffin's contention that Masewic's failure to aspirate Griffin's right knee caused his chondromalacia were true, that is not by itself sufficient to establish a constitutional claim based on deliberate indifference. The fact that Masewic pursued other treatment options and that those

options did not prevent Griffin's chondromalacia does not necessarily show that Masewic or the other defendants were subjectively aware of a substantial risk of serious harm and acted in disregard of that awareness.[7]  See Hilton v. McHugh, 178 F. App'x 866, 871 (11th Cir. 2006) (no deliberate indifference to serious medical need despite subsequent operation on plaintiff's elbow when prison medical staff proscribed only pain medication and brace for elbow pain); Brander v. First Correctional Med., 167 F. App'x 328, 329-30 (3d Cir. 2006) (failing to treat pain and swelling in knee did not rise to the level of deliberate indifference to inmate's serious medical needs).

In addition, Griffin's knee condition, which included pain and swelling, and eventual development of chondromalacia, is not so obviously serious as to qualify as a "serious medical need" for the purposes of a Fourteenth Amendment analysis.  See Boring v. Kozakiewicz, 833 F.2d 468, 473-74 (3d Cir. 1987) (expert testimony needed to determine if injury to ulnar nerve or knee

---

[7] As discussed above, those treatment options included wrapping Griffin's knee with a tight bandage, icing Griffin's knee daily, and placing Griffin on activity restriction.  Activity restriction included, "1) Lower bunk only. 2) Not allowed use of exercise equipment. 3) No exercise yard activity. 4) No climbing up/ down stairs."  Obj. (doc. no. 128-1) at 2.

disorder was serious); Hankins v. Beard, No. 07-332, 2009 WL 5821032, at *12 (W.D. Pa. Nov. 30, 2009) (expert testimony required to show whether plaintiff's knee injury should be classified as "serious"); Mines v. Levi, No. 07-1739, 2009 U.S. Dist. LEXIS 26600, at *27, 2009 WL 839011 (E.D. Pa. Mar. 26, 2009) (swollen and stiff knee was not a serious medical need where x-rays came out negative); Price v. Engert, 589 F. Supp. 2d 240, 246 (W.D.N.Y. 2008) (no serious medical need existed where x-rays revealed no fracture to knee, even if knee was swollen); Johnson v. Wright, 477 F. Supp. 2d 572, 575-76 (W.D.N.Y. 2007) (torn meniscus which eventually needed surgery was not sufficiently serious to give rise to a constitutional claim); Espinal v. Coughlin, No. 98 CIV 2579, 2002 WL 10450, at *1-5 (S.D.N.Y. Jan. 3, 2002) (ruptured anterior cruciate ligament did not constitute severe injury for purposes of a deliberate indifference claim despite a three-year delay in performing surgery while more conservative treatment was attempted).

Based on the foregoing, it is clear that as laymen, the jury would not be in a position to decide whether Griffin's knee condition could be classified as serious and whether Masewic's

or the other defendants' care rose to the level of deliberate indifference so as to prove a Fourteenth Amendment claim. See Brown, 2012 WL 1986518, at *3 ("Here, the medical treatment provide to Brown . . . was not so obviously outrageous or malicious that a lay trier-of-fact could reasonably conclude that it violated the" Constitution.); Boudreau v. Englander, No. 09-CV-247-SM, 2010 U.S. Dist. LEXIS 51809, at *11, 2010 WL 2108219 (D.N.H. May 24, 2010). Because Griffin does not have expert medical evidence to support his claim that the defendants were deliberately indifferent to his serious medical need for treatment of his swollen knee, the defendants are entitled to judgment on Griffin's Fourteenth Amendment claim as to his knee injury.

    2. Kidney stones

Griffin asserts in his objection that evidence in the record concerning his treatment for kidney stones demonstrates that his condition was serious and that the defendants acted with deliberate indifference. For example, Griffin points to (i) the defendants' use of Tylenol rather than a stronger pain medication, (ii) his assertion that Masewic lied in his "declaration" when he claims to have performed a "kidney

function test" when he did not, and (iii) that certain "lab values" in his bloodwork from January of 2014 are identical to his bloodwork from August of 2005 when he had a kidney stone, which demonstrates that the defendants were aware that he was suffering from kidney stones in January of 2014.  See Obj. (doc. no. 137-1) at 3, 5, 6.  Griffin argues that these facts show that the defendants were deliberately indifferent to his serious medical need caused by his kidney stones, and that, therefore, he does not need expert testimony to prove his claim.

Griffin's allegations concerning the defendants' treatment of his kidney stones and the evidence he cites in support of those allegations are insufficient on their own to show that the defendants were deliberately indifferent to Griffin's serious medical condition.  For example, Griffin asserts in his objection that Tylenol was an ineffective pain medication, and the defendants should have offered him something else.  See Obj. (doc. no. 137-1) at 7, 17, 19.  Prescribing a certain pain medication that an inmate feels is less effective than an alternative, however, does not give rise to a claim based on deliberate indifference to medical needs.  See Rush v. Fischer, No. 09 Civ. 9918(JGK), 2011 WL 6747392, at *3 (S.D.N.Y. Dec. 23,

2011) ("The decision to prescribe one form of pain medication in place of another does not constitute deliberate indifference to a prisoner's serious medical needs."); see also McCoy v. Gebreyes, No. 3:11CV474, 2012 WL 6706150, at *4 (E.D. Va. Dec. 26, 2012).

Griffin repeatedly states in his objection to the county defendants' motion for summary judgment that the proper treatment would have been to "transport [him] to a hospital for emergency diagnosis and treatment." Obj. (137-1) at 24; see also id. at 8, 19, 20. In support, Griffin notes that, while at the CCDC in December of 2014, he was transported to the hospital when he claims to have presented similar symptoms to those he presented during his kidney stone attacks. See Obj. (128-1) at 3 & 10; Obj. (137-1) at 7. Griffin's symptoms in December of 2014, however, were the result of appendicitis, for which Griffin claims to have received an emergency appendectomy while in the hospital. Thus, Griffin's attempt to avoid the need for expert testimony by using the CCDC's treatment for his appendicitis as the proper standard of care for kidney stones is unavailing.

The other evidence in the record Griffin cites in support

14

of his claim is insufficient, absent expert testimony, to show that the medical care he received was constitutionally inadequate. See, e.g., Smith v. Wren, No. 07-cv-408-SM, 2009 WL 1783539, at *6 (D.N.H. June 23, 2009) ("Absent expert medical testimony suggesting that defendants' treatment of Smith['s kidney stones] was so far below acceptable medical standards as to constitute an unnecessary and wanton infliction of pain or be repugnant to the conscience of mankind, Smith cannot prevail on his [constitutional] claim on the undisputed facts.").

Accordingly, to prevail on his Fourteenth Amendment claim, Griffin must provide expert medical testimony. Because Griffin lacks such expert testimony, the defendants are entitled to judgment as a matter of law on Griffin's Fourteenth Amendment claim.[8]

## C. First Amendment Retaliation Claim

Griffin alleges that Masewic's substandard care for his kidney stone attack on January 16 "may have been retalitory

---

[8] Because Griffin cannot demonstrate a Fourteenth Amendment violation absent expert testimony, the defendants are also entitled to summary judgment on Griffin's claims based on supervisory liability and municipal liability. See, e.g., Nieves v. McSweeney, 241 F.3d 46, 50 (1st Cir. 2001) (claims of supervisory liability and municipal liability "require proof, inter alia, of an underlying constitutional violation") (citing cases).

[sic] motivated due to . . . Masewic being named personally in this civil complaint." Am. Compl. (doc. no. 34) at ¶ 19. Griffin argues in his objection to Masewic's motion for summary judgment that the care he received for his kidney stones was so clearly substandard that he does not need expert testimony to prove his retaliation claim.

"The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). "An inmate raises a First Amendment claim of retaliation if he shows that the prison official disciplined him for filing a grievance or lawsuit concerning the conditions of his imprisonment." Smith v. Governor for Alabama, 562 F. App'x 806, 815 (11th Cir. 2014); see also Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990).

Griffin's retaliation claim is based on his allegation that the medical care he received for his kidney stones was inadequate. As was discussed above, Griffin needs expert testimony to show that the medical care he received was substandard. See Boudreau, 2010 U.S. Dist. LEXIS 51809, at *11 ("Given the lack of expert medical testimony supportive of

16

Boudreau's view that the care he received was substandard [and constituted deliberate indifference], he cannot, as a matter of law, carry his burden of proof with regard to the second element [of a First Amendment retaliation claim]."). Therefore, an expert is required to support the retaliation claim. Because Griffin lacks expert testimony, Masewic is entitled to judgment on Griffin's retaliation claim.[9]

Griffin's retaliation claim fails for the additional reason that the record evidence shows that Masewic did not have knowledge of this lawsuit until after the date he allegedly took adverse action against Griffin. Griffin filed his initial complaint in this action on December 17, 2013, and claims that Masewic retaliated against him on January 16, 2014. Masewic, however, states that he received a summons notifying him of this action on February 6, 2014, and that he had no knowledge of the lawsuit prior to that date. See Masewic Aff. (doc. no. 120-2) at ¶¶ 4-6. Masewic's statement is supported by the court's January 30, 2014, order, directing the United States Marshal to make service. See Or. (doc. no. 15).

---

[9] Because Griffin's lack of expert testimony to support his claims entitles the defendants to judgment, the court does not address the defendants' remaining arguments in their motions for summary judgment.

17

**Conclusion**

For the foregoing reasons, the court recommends that the district judge grant the defendants' motions for summary judgment (doc. nos. 120 & 133). Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Andrea K. Johnstone
United States Magistrate Judge

May 28 , 2015

cc: John R. Griffin, Jr., pro se
    John Curran, Esq.
    Sarah S. Murdough, Esq.